| UNITED STATES DISTRICT COURT | USDC SDNY |
| SOUTHERN DISTRICT OF NEW YORK | DOCUMENT |
| | ELECTRONICALLY FILED |
| CANON SOLUTIONS AMERICA, INC., | DOC #: |
| | DATE FILED: 5/1/17 |

CANON SOLUTIONS AMERICA, INC.,

               Plaintiff,

-against-

LUCKY GAMES, INC.,

               Defendant.

15 Civ. 6606 (KMW)

**MEMORANDUM**
**OPINION & ORDER**

KIMBA M. WOOD, District Judge:

    Plaintiff Canon Solutions America, Inc. ("Canon") brings this diversity action against Defendant Lucky Games, Inc. ("Lucky") regarding an agreement between the parties for the maintenance of a printer leased by Lucky. Canon alleges that Lucky failed to return thousands of bottles of printer toner belonging to Canon. Lucky denies this and asserts a counterclaim for breach of contract. Canon has now moved for summary judgment. For the reasons stated below, the Court GRANTS Canon's motion in part.

## I. BACKGROUND

A.    Factory Background[1]

    Beginning in September 2010, Lucky entered into a series of maintenance agreements pursuant to which Canon would provide services and supplies—including printer toner—for a Canon printer Lucky leased for use in its printing business. *See* Pl. 56.1 ¶¶ 1, 3, ECF No. 68. In June 2014, the parties entered into the maintenance agreement at issue here. *Id.* ¶ 1 (citing Midgley Decl. Ex. A ("Agreement"), ECF No. 64). Under the terms of the Agreement, Canon was to provide Lucky with enough toner to print 500,000 pages per month. *Id.* ¶ 3. To the

---

[1] Unless otherwise noted, the following facts are undisputed and are derived from the parties' Local Civil Rule 56.1 statements, affidavits, and other submissions. The Court endeavors to note where a fact is disputed.

extent Lucky's toner consumption exceeded that quantity by more than ten percent, Canon reserved the right to invoice Lucky for the additional cost. *Id.* Any unused toner remained Canon property, and Lucky was obligated to return it upon termination of the Agreement. *Id.* ¶ 5.

During a review of the Lucky account in December 2014, Canon discovered that Lucky's toner orders had exceeded that ten-percent threshold. *Id.* ¶ 10. Lucky's refusal to pay the cost of this excess toner prompted further investigation by Canon. *Id.* ¶¶ 11-12. Canon reviewed Lucky's order history and compared it to the printer's internal counter, which tracked Lucky's actual toner usage. *Id.* ¶¶ 18, 20. Based on this review, Canon concluded that Lucky had ordered 2,618 bottles of toner that were never used by the printer. *See id.*

In February 2015, Canon informed Lucky of this discrepancy, as well as Lucky's unpaid account balance of $7,069.92 in service fees and $123.57 in late fees. *Id.* ¶ 14. The parties then terminated the Agreement. *Id.* ¶ 17. According to Canon, the Agreement required Lucky to return any unused toner upon the Agreement's termination, but Canon reports that Lucky returned only 362 bottles. *See id.* ¶ 21. The allegedly missing bottles of toner form the heart of this dispute.

B.   Relevant Procedural History

Canon filed this action against Lucky on August 20, 2015, before the Honorable Analisa Torres. *See* Compl., ECF Nos. 1, 7. By stipulation, Canon amended its complaint on December 5, 2015 and alleged breach of contract, conversion, and unjust enrichment under New York law. Am. Compl. ¶¶ 30-57, ECF No. 22. In its answer, Lucky asserted a counterclaim for breach of contract. Answer 13-15, ECF No. 28. After discovery, Canon moved for summary judgment. Pl. Mot., ECF No. 63. On November 22, 2016, the case was reassigned to the undersigned.

2

## II. LEGAL STANDARD

Summary judgment is appropriate where the record establishes that there is no "genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, a court must "construe the evidence in the light most favorable" to the non-moving party and "draw all reasonable inferences" in the non-moving party's favor. *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010). The moving party has the burden of showing there is no genuine dispute of material fact. *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Supreme Court and the Second Circuit have made clear that the existence of a mere "scintilla of evidence" in support of the nonmovant's position is not enough to defeat a properly supported motion for summary judgment. *Id.* at 252; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 580 (2d Cir. 2006) (quoting *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006)) (explaining that summary judgment cannot be defeated "by a factual argument based on conjecture or surmise").

To demonstrate the existence of a genuine issue of material fact, "[t]he opposing party must come forward with affidavits, depositions, or other sworn evidence as permitted by [Rule 56], setting forth specific facts." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). This evidence must be sufficiently probative for a reasonable factfinder to decide in favor of the nonmoving party on *each* element of his or her claim or defense. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . ."). The nonmoving party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

### III. DISCUSSION

A. <u>Statute of Limitations</u>

As a threshold matter, Lucky contends that this action is barred by the Agreement's statute-of-limitations provision. Lucky quotes this provision in its briefing, without indicating that Lucky omitted several words that materially change the meaning of the Agreement. **That is astonishing, and unbecoming a member of the bar.**[2] The omitted words appear in bold in the following:

> Any suit between the parties **hereto, other than one** seeking payment of amounts **due** hereunder, shall be commenced, if at all, within one (1) year of the date that the claim accrues.

*Compare* Agreement 2, § 8 (emphases added and capitalization omitted), *with* Def. Mem. 5, ECF No. 69. Because Canon seeks payment of amounts due under the Agreement, the one-year limitation does not apply.[3]

---

[2] **Counsel on the brief, Jeffrey Strange, is admonished that he must not misrepresent to a Court facts that are material.**

[3] The conduct at issue in this case is well within New York's six- and three-year statutes of limitations for breach of contract and conversion, respectively. *See* N.Y. C.P.L.R. 213(2), 214(3) (McKinney, Westlaw through 2017 ch. 23).

4

B. <u>Evidentiary Disputes</u>

1. *Local Civil Rule 56.1*

Local Civil Rule 56.1 mandates the exchange of certain statements by the parties to demonstrate the existence—or lack—of genuinely disputed material facts. In particular, the party moving for summary judgment must file a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." L. Civ. R. 56.1(a). Along with its opposition, the nonmoving party must then provide "a correspondingly numbered paragraph," *id.* 56.1(b), which "specifically controvert[s]" the moving party's statements, *id.* 56.1(c). Both parties must substantiate their statements with citation to admissible evidence. *Id.* 56.1(d). Where a moving party has made a statement of fact substantiated by admissible evidence, and the nonmoving party fails to "specifically controvert[]" those facts with its own admissible evidence, the moving party's stated fact is deemed admitted. *Id.* 56.1(c); *accord Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014).

Canon's 56.1 statement has 26 numbered paragraphs, each followed by citations to evidence. *See generally* Pl. 56.1. In opposition, Lucky provided a 56.1 statement responding to only 16 of Canon's paragraphs, and adding 16 of its own statements. *See generally* Def. 56.1, ECF No. 70. Lucky's statement is woefully inadequate. It is not even clear which of Canon's 26 statements are addressed by Lucky's 16 responses, because those responses do not correspond to Canon's statements bearing the same paragraph numbers. *Compare* Pl. 56.1 ¶ 8 (discussing an April 2014 contract), *with* Def. 56.1 ¶ 8 (discussing a December 2014 letter). Most importantly, few of Lucky's responses and additional statements of fact cite to any evidence at all. *E.g.* Def. 56.1 ¶ 7 ("Denies[.]"). **Mr. Strange is admonished that he must follow this Court's Local Rules.**

5

Having reviewed both parties' statements and the evidence cited therein, the Court finds the following facts, stated by Canon, to be supported by admissible evidence. Lucky failed to respond to these factual statements and has presented no evidence to undermine them; the Court therefore deems them admitted. Over the course of the printer lease, Lucky ordered 12,470 bottles of toner from Canon. Pl. 56.1 ¶ 18 (citing Lafayette Decl. ¶ 5 & Ex. A, ECF No. 65). The printer had an internal counter that measured the weight of toner used, and over the course of the lease, the printer used 9,852 bottles of toner. *Id.* ¶ 20 (citing Lafayette Decl. ¶¶ 8-18). Canon charged $79.00 for each bottle of toner. *Id.* ¶ 19 (citing Lafayette Decl. ¶ 5 & Ex. A).

2. *Internal Counter Data*

As just noted, the printer leased by Lucky contained an internal counter that measured the printer's toner usage. During discovery, Canon produced to Lucky its computer-generated summary of the internal counter data; however, Canon mistakenly did not produce the raw data until after the close of discovery. *See, e.g.*, Chin Feman Reply Decl. ¶¶ 2, 6-7, ECF No. 72. Lucky now contends that this mistake should preclude summary judgment, although Lucky does not state why that should be the case. *See* Def. Mem. 4, 9.

Courts are permitted to preclude evidence not properly produced during discovery, but they need not do so where the party's failure was harmless. Fed. R. Civ. P. 37(c)(1). In considering whether preclusion is warranted, courts look to "(1) a party's explanation for the failure to comply with the Federal Rules, (2) the importance of the new evidence, (3) the prejudice suffered by the opposing party of having to prepare to meet the new evidence, and (4) the possibility of a continuance." *Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726 F. Supp. 2d 339, 348 (S.D.N.Y. 2010) (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006)).

Canon's inadvertent failure here was harmless.  Although the internal count of toner used by the printer is of central importance in this case, the parties agree that the thousands of lines of raw data are incomprehensible—it is the computer-generated summaries of that data that are useful.  *See* Pl. Reply 10-11, ECF No. 71; Def. 56.1 ¶ 14; Def. Mem. Ex. C ("Sonen Decl."), ¶ 21.  Canon produced those summaries, and Lucky has long been on notice that Canon would rely on the internal counter to substantiate its claims.  *See* Pl. Reply 9 & n.4 (cataloging the many instances of such notice).  In other words, the raw data is inconsequential—Lucky was on notice that Canon would rely on the internal counter and was free to take discovery concerning the counter's accuracy.  Lucky has not been prejudiced by this delay in production, and the Court declines to preclude the internal counter data.  *See Matheson v. Kitchen*, 515 F. App'x 21, 23 (2d Cir. 2013) (summary order).

To the extent Lucky's argument can be construed as a request to take additional discovery pursuant to Federal Rule of Civil Procedure 56(d), that request is similarly unavailing.  To obtain additional discovery under Rule 56(d), "a party must file an affidavit detailing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to create a genuine issue of material fact; (3) what efforts the affiant has made to obtain those facts; and (4) why these efforts were unsuccessful."  *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 606 (2d Cir. 2005) (per curiam).  Lucky did not file any such affidavit, nor has it identified what discovery, if any, it now seeks to take.  Accordingly, no further discovery will be permitted.  *See Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11, 13-14 (2d Cir. 2013) (summary order) (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994)).

C. Breach of Contract

Canon seeks summary judgment on its claim that Lucky breached the terms of the Agreement by failing to return unused bottles of toner. Under New York law,[4] to make out a claim for breach of contract, a plaintiff must show "(i) the formation of a contract between the parties; (ii) the performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015). Neither party disputes that the Agreement was a validly formed contract; indeed, both parties bring claims for breach of the contract. The remaining elements are discussed in turn.

1. *Performance by Canon*

Lucky contends that Canon failed to perform its obligations under the Agreement when Canon stopped servicing the printer. Def. Mem. 3. The parties agree that Canon cut off its services in February 2015. *See id.*; Pl. 56.1 ¶ 14. Canon responds, however, that this action was justified by Lucky's own breach: Canon's records show that, in February 2015, Lucky's payments under the Agreement were overdue by several thousand dollars. *See* Pl. 56.1 ¶ 13 (citing Chin Feman Decl. ¶ 7 & Ex. B, ECF No. 66). Although Mr. Sonen's declaration states "[t]hat Lucky Games did not owe $7,000 in unpaid service fees or any amount," Sonen Decl. ¶ 25, this conclusory statement is insufficient to controvert Canon's evidence or to raise a genuine dispute. *See, e.g., Hicks v. Baines*, 593 F.3d 159, 167 (2d Cir. 2010) ("[A] party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove."); *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions that are conclusory.").

---

[4] The Agreement provides that it is to be governed by New York law. Agreement 2, § 8.

8

Lucky's failure to pay its monthly service fees constituted a default under the terms of the agreement and entitled Canon to withhold services until the fees were paid. Agreement 2, § 7. This failure was also a material breach of the contract. *See, e.g., Awards.com, LLC v. Kinko's, Inc.*, 834 N.Y.S.2d 147, 155 (App. Div. 2007) ("[T]he monthly fee was the primary consideration under the agreement; indeed, it was the sole consideration for Kinko's. A party's default in payment under similar circumstances is routinely held to constitute a material breach . . . ."), *aff'd*, 925 N.E.2d 926 (N.Y. 2010). Lucky's material breach of the Agreement excused Canon from its obligation to continue its own performance.[5] *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 117 (2d Cir. 2006). Canon having otherwise performed its obligations under the Agreement, the first element of its claim is satisfied.

### 2. *Failure of Lucky to Perform*

In addition to Lucky's obligation to make monthly payments, the Agreement also required Lucky to "return promptly upon termination of th[e] Agreement" any unused consumables, including toner. Agreement 2, § 2. It further specified that Lucky would "bear all risk of loss, theft or damage to unused consumables, which shall remain [Canon]'s property." *Id.* Canon contends that Lucky breached the Agreement by failing to return unused toner upon the Agreement's termination.

As discussed above, Canon has presented uncontroverted evidence that it shipped thousands more bottles of toner than were ever used in the printer, *see supra* Part III.B.1, and that only a fraction of the unused bottles were returned, *see* Pl. 56.1 ¶ 21; Def. 56.1 ¶ 13. Lucky has presented no inventory or other evidence to account for this discrepancy, nor does Lucky

---

[5] For the same reason, summary judgment is granted in Canon's favor as to Lucky's counterclaim for breach of contract.

9

identify any evidence that would call into question the accuracy of the internal counter's measurements or Canon's recordkeeping.

Instead, Lucky altogether fails to engage with Canon's claim for the unused toner. Lucky's opposition focuses on its contention that it did not *overuse* toner. *See* Def. Mem. 7-8. In particular, Lucky argues that "[t]here are two reasons Canon is not entitled to summary judgment on this claim," namely, (1) that Canon has already been compensated for any excess toner used in the printer, and (2) that the Agreement measures excessive toner use based on undisclosed manufacturer's specifications that, according to Lucky, have been improperly withheld. *Id.* at 7. Whether and to what extent Lucky used excessive toner is not relevant to Canon's breach-of-contract claim. Although evidence that Lucky exceeded the Agreement's toner limitations prompted Canon's investigation, Canon now seeks damages for the roughly 2,000 bottles of toner that were never used in the printer, rather than the roughly 9,000 that were. Whether those 9,000 bottles exceeded the terms of the Agreement or the manufacturer's specifications is not relevant.

In sum, Canon has offered evidence that Lucky received more bottles of toner than it used and that a substantial number of the unused bottles were never returned to Canon. Lucky has pointed to no competent evidence upon which a reasonable jury could find that these missing bottles were either used or returned. Under the terms of the Agreement, the unused bottles remained Canon's property, and Lucky's failure to return them constituted a breach for which Lucky expressly bore the risk.[6]

---

[6] Canon initially alleged that Lucky resold the unused toner online. *See* Am. Compl. ¶¶ 17-18. Lucky notes that Canon has not come forward with any evidence of such a sale. *See* Def. Mem. 3; Sonen Decl. ¶ 20 ("[A]ll toner supplied by [Canon] was used in the Canon copier[,] and none was sold during the period December 2010 to December 2014 or anytime[.]"). However,

10

3. *Damages*

Canon seeks damages for the unused, unreturned bottles of toner. The uncontroverted evidence establishes that Canon shipped 12,470 bottles of toner to Lucky and that only 9,852 bottles were used in the printer. *See supra* Part III.B.1. Accordingly, there are 2,618 unused bottles at issue in this action. A United Parcel Service bill of lading indicates that in March 2016, after termination of the Agreement, Mr. Sonen shipped one pallet of toner weighing 356 pounds from Lucky's address in Chicago, Illinois, to Canon's address in Lockbourne, Ohio. Midgley Decl. Ex. F, at 2. Canon's records indicate receipt of that shipment in April 2016 and credit Lucky's account with 362 bottles of toner returned. *See id.* at 1; *see also* Midgley Decl. ¶¶ 14-17. However, Mr. Sonen's declaration asserts that 390 bottles were shipped back to Canon. *See* Sonen Decl. ¶ 18.

Construing the evidence in the light most favorable to Lucky, there is no genuine dispute that 2,228 bottles of toner (2,618 less 390) were unused and unreturned. At $79.00 per bottle, Canon is entitled to damages of $176,012.00. Partial summary judgment is, therefore, granted in Canon's favor in this amount. Through Mr. Sonen's testimony, Lucky has raised a genuine dispute as to the remaining 28 bottles of toner, worth $2,212.00. Summary judgment is denied with respect to this portion of the damages sought by Canon.

D. Conversion

Canon also brings a tort claim of conversion of the same unused toner. Under New York law, "[a] cause of action for conversion cannot be predicated on a mere breach of contract." *Fesseha v. TD Waterhouse Inv'r Servs., Inc.*, 761 N.Y.S.2d 22, 24 (App. Div. 2003). A

---

because Lucky bore "all risk of loss, theft or damage" to unused toner, Agreement 2, § 2, Canon need only show that the toner went unused and unreturned, not specifically that it was resold.

11

conversion claim must be grounded in "'independent facts sufficient to give rise to tort liability' ... [rather] than a restatement of [the] breach of contract claim." *Id.* (quoting *Interstate Adjusters, Inc. v. First Fid. Bank, N.A.*, 675 N.Y.S.2d 42, 44 (App. Div. 1998)). The relief Canon seeks for conversion—compensation for the missing toner—is identical to its contract damages, and it cannot recover a second time in tort. Canon is not entitled to judgment as a matter of law on its conversion claim, and its motion for summary judgment on this claim is denied.

## IV. CONCLUSION

Canon's motion for summary judgment is GRANTED in part as to its claim for breach of contract with regard to 2,228 bottles of toner. Lucky's counterclaim for breach of contract is DENIED. Summary judgment is DENIED in part on Canon's claim for breach of contract with regard to 28 bottles of toner, and is DENIED with respect to Canon's conversion claim. The Clerk of Court is directed to terminate the motion at ECF No. 63.

Canon has represented that it may seek to withdraw its remaining claims. *See* Pl. Mem. 1-2, ECF No. 67. By **May 5, 2017,** Canon is directed to inform the Court whether that withdrawal is on consent, *see* Fed. R. Civ. P. 41(a)(1), or whether it will move the Court for leave to withdraw its remaining claims, *see* Fed. R. Civ. P. 41(a)(2). Otherwise, by **May 30, 2017,** the parties are directed to file their joint pretrial order in accordance with Rule 3(A) of this Court's Individual Practices.

SO ORDERED.

Dated: April 28, 2017
New York, New York

*/s/ Kimba M. Wood*
KIMBA M. WOOD
United States District Judge

12